1
2
3
4
5

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

6   Matthew Powers,                          Case No. 2:20-cv-01399-BNW

7                          Plaintiff,

8        v.                                  **ORDER**

9   Kilolo Kijakazi,*

10                         Defendant.

11

12        This case involves review of an administrative action by the Commissioner of Social

13   Security denying Plaintiff[1] Matthew Powers' application for disability benefits and supplemental

14   security income under Titles II and XVI of the Social Security Act, respectively. The Court

15   reviewed Plaintiff's motion to remand (ECF No. 22), filed March 26, 2021,[2] and the

16   Commissioner's cross-motion to affirm and response to Plaintiff's motion to remand (ECF Nos.

17   26, 27), filed May 24, 2021. Plaintiff replied on June 15, 2021. *See* ECF No. 29.

18        The parties consented to the case being heard by a magistrate judge in accordance with 28

19   U.S.C. § 636(c) on July 28, 2020. ECF No. 2. This matter was then assigned to the undersigned

20   magistrate judge for an order under 28 U.S.C. § 636(c). *Id.*

21   **I.    BACKGROUND**

22        **1.    Procedural History**

23        On June 21, 2017, Plaintiff applied for disability benefits and supplemental security

24   income under Titles II and XVI of the Act, respectively, alleging an onset date of November 22,

25

26   _____

27        * Kilolo Kijakazi has been substituted for her predecessor in office, Andrew Saul, pursuant to Federal Rule of Civil Procedure 25(d).

        [1] The Court will use claimant and plaintiff throughout this Order. The terms are interchangeable for the purposes of this Order.

28        [2] Plaintiff filed a Notice of New Authority on April 28, 2021. ECF No. 25.

2016.[3] ECF No. 20-2[4] at 14–15. His claim was denied initially and on reconsideration. ECF No. 20-1 at 174–79; 181–86. A hearing was held before an Administrative Law Judge ("ALJ") on August 7, 2019. *Id*. at 43–72. On August 21, 2019, ALJ Timothy G. Stueve issued a decision finding that Plaintiff was not disabled. *Id*. at 22–36. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied review on May 28, 2020. *Id*. at 7–12. Plaintiff, on July 27, 2020, timely commenced this action for judicial review under 42 U.S.C. § 405(g). *See* IFP App. (ECF No. 1).

## II.      DISCUSSION

### 1.      Standard of Review

Administrative decisions in Social Security disability benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which [s]he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See id*.; *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*,

---

[3] Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time. Title XVI of the Social Security Act is a needs-based program funded by general tax revenues designed to help disabled individuals who have low or no income. Although each program is governed by a separate set of regulations, the regulations governing disability determinations are substantially the same for both programs. Compare 20 C.F.R. §§ 404.1501– 1599 (governing disability determinations under Title II) with 20 C.F.R. §§ 416.901–999d (governing disability determinations under Title XVI).

[4] ECF No. 20 refers to the Administrative Record in this matter which, due to COVID-19, was electronically filed. (Notice of Electronic Filing (ECF No. 20)). All citations to the Administrative Record will use the CM/ECF page numbers.

278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004). When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

### 2. Disability Evaluation Process

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous

period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of his claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that he can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. *Id.* § 404.1572(a)–(b). If the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits him from performing basic work activities. *Id.* § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. *Id.* § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28, 96-3p, and 96-4p.[5] If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

---

[5] SSRs constitute the SSA's official interpretation of the statute and regulations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are "entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations." *Bray*, 554 F.3d at 1224 (citations omitted) (finding that the ALJ erred in disregarding SSR 82-41).

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made. 20 C.F.R. § 404.1520(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

But before moving to step four, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; *see also* SSRs 96-4p and 96-7p. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years. In addition, the work must have lasted long enough for the individual to learn the job and performed a SGA. 20 C.F.R. §§ 404.1560(b) and 404.1565. If the individual has the RFC to perform his past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If he is able to do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence demonstrating that other work exists in significant numbers in the economy that the individual can do. *Yuckert*, 482 U.S. at 141–42.

Here, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. ECF No. 20-1 at 27–36.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 22, 2016. *Id*. at 27.

At step two, the ALJ found that Plaintiff had the following medically determinable "severe" impairments: polycystic kidney disease, degenerative disc disease of the lumbar spine post fusion and hardware removal, chronic pain syndrome, attention deficit disorder, history of polysubstance abuse, and bipolar disorder. *Id*. at 28. He further found that Plaintiff's thyroid disease was non-severe. *Id*.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 28–29.

Before moving to step four, the ALJ also found that Plaintiff had the RFC to perform sedentary work with the following exceptions: He can sit for 6 hours; he can stand and walk for 2 hours; he can lift and carry 10 pounds occasionally; he can occasionally climb ramps and stairs; he can occasionally balance on level surfaces; he can occasionally stoop; he can occasionally tolerate exposure to vibration; he can carry out detailed but involved instructions to perform simple, routine, and repetitive tasks involving only simple work-related decisions with few, if any, workplace changes; he can never climb ladders, ropes, or scaffolds; he can never kneel, crouch, or crawl; and he can never tolerate exposure to unprotected heights and moving mechanical parts. *Id*. at 29–30.

At step four, the ALJ found that Plaintiff cannot perform any past relevant work. *Id*. at 34.

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and found that there are jobs that exist in significant numbers in the national economy that he can perform. *Id*. at 35–36. Specifically, he found that Plaintiff can work as a lens inserter, production checker, and semiconductor assembler. *Id*. at 36. The ALJ then concluded that Plaintiff was not under a disability at any time from November 22, 2016 through the date of his decision. *Id*.

### 3.   Analysis
#### a.   Whether the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's pain and symptom testimony

##### i. The parties' arguments

Plaintiff moves to remand this matter because he argues that each of the ALJ's reasons for discounting his pain and symptom testimony are not "specific, clear, and convincing." ECF No. 22 at 6.

First, Plaintiff argues that the ALJ failed to identify which evidence contradicted Plaintiff's pain and symptom testimony, noting that a blanket assertion that a plaintiff's complaints are "inconsistent with the record as a whole is not a specific, clear[,] and convincing reason." *Id*. at 7.

Second, Plaintiff argues that the ALJ's reason to discount his pain and symptom testimony on grounds that Plaintiff obtained conservative mental health treatment is not a specific, clear, and convincing reason. *Id*. Plaintiff adds that the ALJ further erred by not identifying alternative treatments that Plaintiff should have obtained.

Finally, Plaintiff argues that the ALJ erred by finding that Plaintiff's activities of daily living were inconsistent with his pain and symptom testimony. *Id*. at 8. According to Plaintiff, this reasoning by the ALJ is not supported by the record, as the ALJ "did not demonstrate that [Plaintiff] spent 'a substantial part of h[is] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting' as required." *Id*. Additionally, Plaintiff notes the activities of daily living that the ALJ cited "do not constitute an adequately specific conflict with [Plaintiff's] reported limitations[,]" explaining that Plaintiff did not testify that he

"was completely bedridden, but only that she [sic] could not work full-time given her [sic] condition." *Id*.

The Commissioner's summary of the ALJ's reasons for discounting Plaintiff's pain and symptom testimony slightly vary from Plaintiff's summary. She argues that the ALJ provided three reasons to discount this testimony: (1) Plaintiff's testimony was inconsistent with the objective evidence found in the record, (2) Plaintiff's testimony was inconsistent with his treatment history,[6] and (3) Plaintiff's testimony was inconsistent with his activities of daily living. ECF No. 26 at 6. Nonetheless, the Commissioner argues that the ALJ did not err, as his reasons were supported by the record. *Id*.

### ii. The ALJ's decision

The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." ECF No. 20-1 at 30. The ALJ cited three reasons: (1) "the objective findings in this case fail to provide strong support for the claimant's allegations of disabling limitations[,]" (2) Plaintiff's treatment does not support his "allegations of disabling limitations" regarding his physical and mental health impairments, and (3) "[t]he record shows that the claimant is able to engage in several activities of daily living." *Id*. at 31–33.

### iii. Whether the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's pain and symptom testimony

An ALJ engages in a two-step analysis to determine whether a plaintiff's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted). "The claimant is not required to show that h[is] impairment 'could reasonably be expected to cause the severity of the symptom [he] has alleged;

---

[6] It seems that while Plaintiff focuses on the ALJ's finding that Plaintiff underwent conservative mental health treatment, the Commissioner reads the ALJ's decision as being more broadly focused on Plaintiff's overall treatment and how it is inconsistent with his pain and symptom testimony.

[he] need only show that it could reasonably have caused some degree of the symptom.'" *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citations omitted).

Second, "[i]f the [plaintiff] meets the first test and there is no evidence of malingering, the ALJ can only reject the [plaintiff's] testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the [plaintiff's] complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas*, 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the plaintiff's] testimony.")).

The Ninth Circuit has recognized the clear and convincing evidence standard to be "the most demanding required in Social Security cases" and "not an easy requirement to meet." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)); *Trevizo v. Berryhill,* 871 F.3d 664, 678 (9th Cir. 2017). An ALJ's failure to provide "specific, clear, and convincing reasons" for rejecting a plaintiff's pain and symptom testimony constitutes legal error that is not harmless because it precludes the Court from conducting a meaningful review of the ALJ's reasoning and ensuring that the plaintiff's testimony is not rejected arbitrarily. *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).

In making an adverse credibility determination, the ALJ may consider, among other, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958–59.

Here, because there is no dispute that Plaintiff's impairments, as of the alleged onset date, could have caused the symptoms about which he testified at the ALJ hearing, the ALJ had to make a credibility determination as to Plaintiff's testimony. *Molina*, 674 F.3d at 1112. And

1  because the ALJ did not find that Plaintiff was a malingerer, the ALJ had to provide specific,

2  clear, and convincing reasons, supported by substantial evidence, to discount Plaintiff's

3  subjective symptom testimony. *Ghanim*, 763 F.3d at 1163.

4      As discussed below, the Court holds that the ALJ failed to provide specific, clear, and

5  convincing reasons, supported by substantial evidence, to discount Plaintiff's subjective symptom

6  testimony as each of his proffered reasons was flawed. *See Lingenfelter v. Astrue,* 504 F.3d 1028,

7  1036 (9th Cir. 2007). Accordingly, he committed a non-harmless legal error. The Court will

8  discuss each cited reason in turn.

9              **a.  Plaintiff's activities of daily living**

10      The ALJ may consider a claimant's activities that undermine reported symptoms.  *Rollins*,

11  261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits

12  involving the performance of exertional or non-exertional functions, the ALJ may find these

13  activities inconsistent with the reported disabling symptoms. *Fair v. Bowen*, 885 F.2d 597, 603

14  (9th Cir. 1989); *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in

15  order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the

16  claimant reports participation in everyday activities indicating capacities that are transferable to a

17  work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*,

18  674 F.3d at 1112–13.

19      Here, the ALJ noted that Plaintiff's ability to cook simple meals,[7] do laundry, perform

20  light cleaning, care for his personal hygiene, use public transportation, drive, and handle his

21  personal finances established that Plaintiff's activities of daily living "are not limited to the extent

22  one would expect, given the complaints of disabling symptoms and limitation that preclude him

23  from work activities." ECF No. 20-1 at 33. The ALJ's explanation, however, lacks any

24  specificity. First, the ALJ does not cite to the record. The Court assumes that the activities of

25  daily living (e.g., cooking simple meals, taking public transportation) that the ALJ relied upon

26  were taken from the adult function report that Plaintiff completed on May 2, 2017. *See* ECF No.

27

28          [7] Plaintiff's adult function report provides that Plaintiff prepares "salads, sandwiches[,] TV dinners, [and] soups." ECF No. 202 at 77.

20-2 at 75–83. Nonetheless, even with citations to the record, it remains unclear to the Court *how* Plaintiff's ability to engage in simple tasks like cleaning his room or doing laundry, which Plaintiff notably qualified as "sometimes" taking "all day[,]" is inconsistent with his pain and symptom testimony. This is to say that it is unclear to the Court how Plaintiff's ability to complete simple tasks over a longer period of time is inconsistent with his testimony, which, as the ALJ summarized, included statements about suffering from constant lower back pain, radiating pain down his legs, numbness in his legs, and chronic pain. ECF No. 20-2 at 77. Additionally, in the same adult function report (that the Court believes the ALJ relied upon in his discussion on Plaintiff's activities of daily living), Plaintiff wrote that he "can[']t stand walk for long periods of time[.]" *Id.* at 75.

Second, the ALJ's reasoning is flawed. The Ninth Circuit, as Plaintiff seems to argue, has "'repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from h[is] credibility as to h[is] overall disability.'"[8] *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001)). Here, as in *Orn*, Plaintiff's activities do not contradict his other testimony or "meet the threshold for transferable work skills[.]" *Orn*, 495 F.3d at 639.

The ALJ also found that even though Plaintiff "may not be able to engage in all of the activities that he did in the past and it may take him longer to perform the tasks, he is more active than would be expected if all of his allegations were consistent with the record." ECF No. 20-1 at 33. But, again, the ALJ failed to add specificity to this otherwise-generalized statement. For example, *how* is Plaintiff more active than his allegations support, or *how* do Plaintiff's activities of daily living transfer to a work setting? "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an

---

[8] The Ninth Circuit has held that many of the activities of daily living that the ALJ cited to "do not necessarily translate to the work environment." *Saunders v. Astrue*, 433 F. App'x 531, 533 (9th Cir. 2011); *see also Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001) (holding that grocery shopping, driving a car, and limited walking for exercise are not inconsistent with disability); *see also Reddick v. Chater,* 157 F.3d 715, 723 n.1 (9th Cir. 1998) (noting that limited cooking, cleaning, and shopping are not indicative of an ability to engage in sustained work activity).

1    adverse credibility determination." *Orn*, 495 F.3d at 639 (quoting *Burch,* 400 F.3d at 681). Not

2    doing so constitutes legal error. *See Orn*, 495 F.3d at 639.

3        The Commissioner provides additional explanations to support the ALJ's finding that

4    Plaintiff's activities of daily living are inconsistent with his testimony. ECF No. 26 at 11-12. But,

5    as the Commissioner is well aware, the Court is "constrained to review the reasons the ALJ

6    asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). As a result, reasons provided by

7    the Commissioner "cannot provide the basis upon which we can affirm the ALJ's decision."

8    *Brown-Hunter*, 806 F.3d at 494.

9        In short, the ALJ simply provided a non-credibility conclusion and summarized the

10   evidence without *specifically* identifying what aspects of the record were inconsistent with

11   Plaintiff's testimony. This failure on the part of the ALJ to "identify the testimony [he] found not

12   credible" and to "link that testimony to the particular parts of the record supporting [his] non-

13   credibility determination" constitutes legal error. *Brown-Hunter*, 806 F.3d at 494; see also

14   *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir. 1999) (citations omitted)

15   ("The ALJ must specifically identify what testimony is credible and what testimony undermines

16   the claimant's complaints.")

17       And this legal error is not harmless because the Court cannot conclude that no reasonable

18   ALJ, when fully crediting the testimony, could have reached a different decision. *Marsh v.*

19   *Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (noting that errors are "harmless if they are

20   'inconsequential to the ultimate nondisability determination' and . . . [the court] can confidently

21   conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a

22   different disability determination").

23                          **b.  Plaintiff's treatment**

24       The effectiveness of treatment is a relevant factor in determining the severity of a

25   claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2011); *Warre v. Comm'r of*

26   *Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining that conditions effectively

27   controlled with medication are not disabling for purposes of determining eligibility for

28   benefits; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable

1  response to treatment can undermine a claimant's complaints of debilitating pain or other severe

2  limitations).

3      Here, the ALJ found that, according to the medical evidence, Plaintiff's lumbar pain is

4  "fairly well controlled" with treatment and "the level of mental health treatment the claimant has

5  undergone is not suggestive of him having disabling limitations." ECF No. 20-1 at 31, 33. The

6  ALJ was silent on whether Plaintiff's treatment for his other severe impairments was effective in

7  controlling these impairments or too conservative.[9]

8      The Court will turn first to the ALJ's finding that Plaintiff's lumbar pain is "fairly well

9  controlled" with treatment. ECF No. 20-1 at 31. To support this finding, the ALJ provided a

10 summary of the treatment Plaintiff obtained with respect to his lumbar degeneration. The ALJ

11 noted that Plaintiff obtained epidural steroid injections with "limited benefit[;] "elected to

12 undergo surgery on his lumbar spine[;]" and, although Plaintiff "reported improvement with his

13 fusion [surgery,]" he "requested that his hardware be removed." *Id*. The ALJ then stated that

14 since Plaintiff's hardware was removed, "he has continued to receive ongoing pain

15 management[,]" including "several" epidural steroid injections, radio frequency ablations "on a

16 regular basis[,]" and pain medications, for which Plaintiff has reported having pain relief. *Id*. The

17 ALJ also stated that Plaintiff was told in April 2019 that he would no longer receive "prescribed

18 narcotic medications because of repeated abnormal urine toxicology screens." *Id*. Finally, the ALJ

19 concluded "[T]his evidence indicates that with treatment[, Plaintiff's] pain was fairly well

20 controlled" and, therefore, "the record does not support his allegations of significant ongoing

21 limitations." *Id*.

22     While the ALJ identified evidence from the record showing that Plaintiff was

23 experiencing pain relief from his treatments, the ALJ erred in several respects.

24     First, he did not accurately represent Plaintiff's position with respect to his decision to

25 remove the hardware in his back. The ALJ correctly acknowledged that Plaintiff reported

26 improvement following his fusion at a follow-up appointment at Nevada Orthopedic & Spine

27

28     [9] The ALJ did, however, note that "it does not appear that [Plaintiff] started this recommended [medication therapy] treatment" for the cysts in his kidney. ECF No. 20-1 at 32. He did not elaborate on this point.

1    Center on May 1, 2017. ECF No. 20-1 at 31, ECF No. 20-3 at 84-85. But the ALJ failed to

2    acknowledge how, at the time of the lumbar fusion hardware removal at Spring Valley Hospital

3    Medical Center ("SVHMC") later that month,[10] SVHMC medical records provide that Plaintiff is

4    "approximately one year status post L5-S1 fusion and desires hardware removal in hopes of

5    decreasing his pain" and that the "patient elected hardware removal in hopes of improving axial

6    lumbar spine pain." ECF No. 20-2 at 532, 548. The hospital records further show that, prior to the

7    surgery, Dr. Reynold Rimoldi, M.D. "explained to [Plaintiff] that there is no guarantee of

8    complete pain relief [and] that alternative[s] such as therapy, medications, and injections were

9    offered." *Id.* at 533.

10        Second, the ALJ omitted other evidence from the record where Plaintiff continued to

11    report to his medical providers that, despite the treatment, he was still experiencing lumbar pain.

12    For example, in July 2017, after he had undergone surgery to remove hardware from his spine,

13    Plaintiff told his medical provider at Nevada Comprehensive Pain Center that his "axial pain has

14    returned[,]" it "radiates into the bilateral paralumbar area down bilateral lower extremities to the

15    feet[,]" he is experiencing burning, numbness, and tingling, and his symptoms are aggravated by

16    "lumbar motion, getting in and out of a vehicle, going from sitting to standing position, being in

17    one position for prolonged periods of time, [and] lifting heavier objects." ECF No. 20-3 at 58. As

18    a result, his provider approved him for repeat bilateral lumbar radiofrequency ablations at L3-S1.

19    *Id.* At this same appointment, Plaintiff rated his pain level as a 6/10 but noted that it can vary

20    between 4/10 and 8/10. *Id.*

21        Further, the ALJ found that Plaintiff "reported pain relief with pain medications[,]" citing

22    to a single medical record from Nevada Comprehensive Pain Center dated April 5, 2019.[11] ECF

23    No. 20-1. But this medical record specifically notes that Plaintiff "reports 40% pain relief on

24    current medications." ECF No. 20-3 at 298. Notably, other medical records from Nevada

25    Comprehensive Pain Center from 2017 through 2019 also note that "[t]he patient reports 40%

26

27    ───────────────
      [10] The procedure took place May 26, 2017. ECF No. 20-2 at 532.
28    [11] This same progress note shows that Plaintiff had abnormal toxicology screens on May 9, 2018; November 8, 2018; and March 8, 2019. ECF No. 20-3 at 298. As a result, and as the ALJ correctly pointed out, Plaintiff's medical provider determined that Plaintiff could no longer receive opioid prescriptions for his pain management. *Id.*

pain relief on current medications." *See, e.g., id.* at 58 (July 13, 2017 "follow-up of chronic pain"), 352 (July 12, 2018 "follow-up of chronic pain"), 303 (March 8, 2019 "follow-up of chronic pain"). Additionally, the April 2019 Nevada Comprehensive Pain Center progress note (that the ALJ singularly cited to) provides that Plaintiff, despite being on pain medication, continues to suffer from radiating axial low back pain as well as experiencing pain levels between 2/10 and 8/10, though the then-current pain level was 4-5/10. *Id.* at 298. Other progress notes from Nevada Comprehensive Pain Center indicate that Plaintiff experiences radiating axial low back pain; has a pain level that varies between 2/10 and 8/10;[12] and has various symptoms like burning, numbness, and tingling that are aggravated by lifting heavier objects, being in one position for a prolonged period of time, going from a sitting to a standing position, and getting in and out of a vehicle. *See, e.g. id.* at 303, 308, 324, 334. This means that while Plaintiff reported that medication helped manage his lumbar pain, he simultaneously reported that he continued to experience lumbar pain.

Additionally, while the ALJ noted that Plaintiff experienced "significant pain relief" from epidural steroid injections and radio frequency ablations, the medical records that the ALJ cites in support of his position qualify many of these benefits.[13] ECF No. 20-1 at 31. For example, the progress note dated September 13, 2018 from Nevada Comprehensive Pain Center indicates that Plaintiff was experiencing an 80 percent benefit from the radiofrequency ablations that were completed about 5 months earlier. But the progress note also provides that Plaintiff was experiencing a 50 percent benefit from an epidural injection performed about 6 months earlier and a 30 percent benefit from an epidural injection performed about 10 months earlier. ECF No. 20-3 at 344. The rest of the progress note indicates that many of the benefits from the ablations were, indeed, significant (i.e., ranging between 65 and 80 percent), *but* they also were short-term (i.e., lasting 6 months). *Id.* Moreover, Plaintiff's relief from facet blocks resulted in an 80-to-90

---

[12] Other progress notes from Nevada Comprehensive Pain Center indicate a pain level that ranges between 4/10 and 8/10. *See, e.g.,* ECF No. 20-3 at 380 (March 9, 2018), 360 (May 9, 2018 progress note).

[13] A progress note from Nevada Orthopedic & Spine Center dated February 29, 2016, which the ALJ did not cite, indicates that Plaintiff "had a multitude of epidural injections with limited benefit." ECF No. 20-3 at 94. And a progress note from Nevada Comprehensive Pain Center dated November 8, 2018, which was also not cited by the ALJ, indicates that—about seven months after receiving bilateral lumbar radiofrequency ablation—Plaintiff's "pain is back to baseline at this point." *Id.* at 334.

percent benefit for only 3 days, and his relief from "bilateral TFESI" was "limited." *Id*. Of note, although the ALJ did not discuss Plaintiff's physical therapy, medical records show that he obtained "no relief" from this treatment. *See, e.g., id.* at 63, 304; *see also* ECF No. 20-2 at 472 (progress note dated February 11, 2016 noting that Plaintiff completed physical therapy without much improvement).

On this record, the Court cannot find that substantial evidence exists to support the ALJ's finding that Plaintiff's lumbar pain was "fairly well controlled" and, thus, inconsistent with Plaintiff's pain and symptom testimony.

Next, the Court turns to the ALJ's finding that "the level of mental health treatment the claimant has undergone is not suggestive of him having disabling limitations." ECF No. 20-1 at 33. The ALJ explained that Plaintiff received conservative treatment for his mental health impairments, as he obtained only medication management and therapy, did not require inpatient care, and did not need "any type of case management." *Id*. This reasoning, however, is flawed.

First, as Plaintiff correctly points out, such a conclusion is not specific or convincing because it does not identify any "medical opinions stating what sort of treatment *should* be expected for a totally disabled individual suffering from [the p]laintiff's impairments . . . ." *Schultz v. Colvin*, 32 F. Supp. 3d 1047, 1060 (N.D. Cal. 2014) (emphasis in original). And the absence of such medical opinions "suggest[s] that the ALJ impermissibly relied on h[is] own, lay medical opinion." *Id*.

The Court also notes that, assuming such treatments exist, the ALJ did not inquire at the hearing why more aggressive treatment was not pursued. *See* ECF No. 20-1 at 49-54 (the hearing transcript shows that the ALJ posed questions to Plaintiff regarding where he lived; his education, financial situation, and past work; why he is unable to work full-time; who prescribes his mental health medications; and information regarding his kidney condition). As a result, the ALJ's inaction coupled with his conclusion amounts to legal error. *See* Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *8 ("We will not find an individual's symptoms inconsistent with the evidence in the record . . . without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.")

1    Additionally, the Ninth Circuit and district courts within the Circuit have recognized

2    that—within the context of mental health impairments—the prescription of psychiatric

3    medications is not indicative of conservative treatment. *See, e.g., Drawn v. Berryhill*, 728 F.

4    App'x 637, 642 (9th Cir. 2018) (unpublished decision holding that the ALJ erred in classifying

5    the claimant's treatment as conservative "given that she was prescribed a number of psychiatric

6    medications"); *Childress v. Colvin*, 2015 WL 2380872, at *14 (C.D. Cal. May 18, 2015) (noting

7    that treatment including years of therapy, prescription antidepressants, and prescription

8    antipsychotics cannot be properly characterized as conservative treatment).

9    Here, the record indicates that Plaintiff was prescribed Alprazolam (i.e., Xanax),[14]

10   Bupropion (i.e., Wellbutrin),[15] Clonazepam,[16] Risperidone (i.e., Risperdal), Sertraline HCI (i.e.,

11   Zoloft),[17] and Trazodone HCI. *See, e.g.,* ECF No. 20-2 at 271, 280, 283, 300, 313, 324, 336.

12   Plaintiff's prescriptions were monitored and adjusted in conjunction with regular in-person

13   appointments with Nicole James, LCSW and Marlynn Larivee, APRN. *See, e.g.,* ECF No. 20-2 at

14   270-339. Accordingly, this was not a conservative course of treatment, and the ALJ erred in

15   concluding otherwise. *See Carden v. Colvin*, No. CV 13–3856–E, 2014 WL 839111, at *3 (C.D.

16   Cal. Mar. 4, 2014) (listing cases) ("Courts specifically have recognized that the prescription of

17   several of these medications [including Risperdal, Trazodone, Wellbutrin, and Zoloft] connotes

18   mental health treatment which is not 'conservative,' within the meaning

19   of social security jurisprudence.").

20   Accordingly, the ALJ's conclusion that Plaintiff's pain and symptom testimony was

21   inconsistent with his treatment for his lumbar pain and mental health impairments lacks

22   substantial evidence and, therefore, is not a specific, clear, and convincing reason. Additionally,

---

23   [14] "Xanax (Alprazolam) is used to treat anxiety disorders and panic disorder by decreasing abnormal
24   excitement in the brain[.]" *Boyles v. Colvin*, 2016 WL 5660380, at *4 (D. Alaska Sept. 29, 2016).
     [15] "Wellbutrin is an antidepressant used to treat major depressive disorder and seasonal affective
25   disorder." *Goodman v. Berryhill*, 2017 WL 1365122, at *3 n.5 (N.D. Cal. Apr. 14, 2017).
     [16] At one point, Plaintiff's medical providers discontinued his use of Clonazepam and, instead, prescribed
26   Xanax. ECF No. 20-2 at 300. "Clonazepam is a benzodiazepine prescribed to control certain types of seizures and to
     relieve panic attacks." *Gomez v. Saul*, 2019 WL 5721659, at *4 n.11 (E.D. Cal. Nov. 5, 2019). It "tends to cause
27   drowsiness, and, in higher dosages, might cause weakness, imbalance, and sedation to the point of being unable to be
     aroused or to have breathing difficulties." *Lehmann v. Beard,* 2018 WL 2283740, at *4 (C.D. Cal. Apr. 4, 2018).
     [17] "Sertraline HCI (Zoloft) is used to treat depression, OCD, panic attacks, post-traumatic stress disorder,
28   and social anxiety disorder." *Alvarado v. Berryhill*, 2017 WL 3730830, at *4 n.3 (C.D. Cal. Aug. 29, 2017).

1    this error is non-harmless because the Court cannot conclude that no reasonable ALJ, when fully

2    crediting the testimony, could have reached a different decision. *Marsh*, 792 F.3d at 1173; *see*

3    *also Stout*, 454 F.3d at 1055.

4                                   **c.   Objective medical evidence**

5           Finally, the ALJ found that "the objective findings in this case fail to provide strong

6    support for the claimant's allegations of disabling limitations." ECF No. 20-1 at 31. In other

7    words, the ALJ's final reason for discounting Plaintiff's pain and symptom testimony is that the

8    objective medical evidence does not support the severity of Plaintiff's allegations. But because

9    the Court found non-harmless errors with respect to the other two reasons that the ALJ cited to

10   discount Plaintiff's testimony, this third and final reason also constitutes legal error. This is so

11   because an ALJ "may not discredit the claimant's subjective complaints solely because the

12   objective evidence fails to fully corroborate the degree of pain alleged." *Coleman v. Saul*, 979

13   F.3d 751, 756 (9th Cir. 2020) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

14           **b.     Whether the jobs the ALJ found that Plaintiff could perform exist**
15   **in "significant" numbers**

16          After finding that Plaintiff could not perform any past relevant work, the ALJ found that

17   Plaintiff could perform three different jobs and, based on the vocational expert's testimony at the

18   hearing, these jobs exist in "significant" numbers. ECF No. 20-1 at 34-36. The parties dispute

19   whether this was an accurate conclusion and whether Plaintiff waived his right to argue this issue

20   by not raising it at the hearing. Because the Court found that the ALJ erred by discounting

21   Plaintiff's pain and symptom testimony, it does not need to reach this issue. This is so because, on

22   remand, the ALJ, by having to reconsider his adverse credibility determination, will have to

23   reconsider Plaintiff's residual functional capacity and, in turn, whether Plaintiff can perform any

24   jobs.

25   **III.   CONCLUSION AND ORDER**

26          Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's motion to remand (ECF No.

27   22) is GRANTED.

28

1    **IT IS FURTHER ORDERED** that this case is REMANDED for further proceedings

2  regarding Plaintiff's pain and symptom testimony.

3    **IT IS FURTHER ORDERED** that, based on the ALJ's reconsideration of Plaintiff's

4  pain and symptom, the ALJ must reconsider Plaintiff's residual functional capacity, past relevant

5  work, and whether Plaintiff can perform jobs that exist in significant numbers in the economy.

6    **IT IS FURTHER ORDERED** that the Commissioner's cross-motion to affirm and

7  response to Plaintiff's motion to remand (ECF Nos. 26, 27) is DENIED.

8    **IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to close this

9  case.

10

11    DATED: November 4, 2021.

12    _____

13    BRENDA WEKSLER
      UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28